UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13CV-00145-GNS-HBB

ALICIA E. WILLIAMS                                                              PLAINTIFF

V.

STEAK 'N SHAKE                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment (DN 30) filed by

Defendant Steak 'n Shake.  The motion has been thoroughly addressed by the parties and is now

ripe for a decision.  For the following reasons, the motion is GRANTED.

## I.  STATEMENT OF FACTS AND CLAIMS

Plaintiff Alicia E. Williams ("Williams") first worked for Defendant Steak 'n Shake at its

1680 Scottsville Road location in Bowling Green, Kentucky, from 2000 to 2002.  (Williams Dep.

31:3-13, Sept. 4, 2014, DN 32-1).  In 2002, she moved to Texas but returned to Kentucky in

2006. (Williams Dep. 31:11-14).

On July 25, 2007, Williams began her second tenure with Steak 'n Shake when she was

hired as a food production associate at the same Bowling Green location.  (Williams Dep. 31:18-

33:9).   In that position she was primarily responsible for meal preparation, which involved

working with the cooks to prepare meals.  (Williams Dep. 32:9-22).

In 2012, Williams was cited for two separate incidents involving inappropriate workplace

conduct.  (Williams Dep. Ex. 9 & 11, DN 32-2).  At the time of these incidents, the General

1

Manager was Kathy Lightfoot ("Lightfoot"), and the District Manager was Denise Gadberry ("Gadberry").

On May 27, 2012, Williams engaged in behavior that Lightfoot described as reflecting a "bad attitude" and exhibiting "poor teamwork."  (Williams Dep. Ex. 9, DN 32-2).  During her deposition, Williams described the incident as follows:

> Well, the incident applied to me getting an attitude problem was when at the time of the lunch rush, the service put trays on top of this crossover we call it where we prepare the food and put it in the window for the service to pick it up to take it to the customers.
> Well, they had stacked trays on top of this crossover and I went up to reach for a tray so I could put my—you know, my orders on.  The whole stack fell down on my head.
> Now, this is at the lunch rush and we've got a lot of people that came in at this time trying to get these orders out.
> Well, the manager from Saint Louis took it upon his self when the when the trays fell on the floor, I went down to reach you know, pick up the trays.  One or two of them fell out of my hand that I was picking them up.
> He took it upon his self like I was throwing them on the on the floor.  And he made a smart remark, said, you can go home if you can't get your attitude together, or something to that nature, and he—I it was a smart remark.  I ignored it.  I just looked at him and ignored him and continued my work.

(Williams Dep. 48:18-49:18).  At the end of her shift, Williams received a written warning for her behavior (which she refused to sign) and was cautioned that similar behavior in the future could result in her termination.  (Williams Dep. Ex. 9, DN 32-2; Williams Dep. 49:19-24, DN 32-2; Gadberry Dec. ¶ 5, DN 32-3).

On July 14, 2012, Williams missed work.  (Williams Dep. 53:1-12).  She was cleared to return to work without any restrictions on July 16, 2012, and Williams provided a doctor's note to her employer.  (Williams Dep. 53:13-25).  On July 17, 2012, Lightfoot observed an outburst by Williams.  Lightfoot stated that Williams "got an attitude" and told a server "looking down the line won't get your food out any faster."  According to Williams, Lightfoot told her to "lose

[her] attitude." (Williams Dep. 59:6). Williams stated "I can go home," and in response, Lightfoot told Williams that she should "go." (Williams Dep. 59:11-14).

After that incident, Lightfoot spoke with Gadberry about Williams' behavior, and they made the decision to terminate Williams' employment. (Gadberry Dec. ¶ 6, DN 32-3). Lightfoot completed a corrective action form in which Lightfoot noted that Williams had exhibited a "poor attitude towards co-workers & [General Manager], refused to work as a team member." (Gadberry Dec. Ex. 4, DN 32-3). The form also indicated that Williams' prior discipline was due to "bad attitude, poor teamwork," and that because of reoccurrence of this behavior, Williams was being terminated. (Gadberry Dec. Ex. 4, DN 32-3). Upon the advice of Human Resources, Gadberry also told Lightfoot to obtain statements from witnesses reflecting what had occurred. (Gadberry Dec. ¶ 6, Ex. 6, DN 32-3).

Plaintiff filed this action alleging disability discrimination,[1] wrongful termination, and defamation of character. (Compl. 3, DN 1). Following the completion of discovery, Steak 'n Shake moved for summary judgment. (Def.'s Mot. for Summ. J., DN 30).

## II. <u>JURISDICTION</u>

This Court has jurisdiction over this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's pendent state law claims. *See* 28 U.S.C. § 1367.

## III. <u>STANDARD OF REVIEW</u>

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving

---

[1] Plaintiff completed the *pro se* complaint form for alleging violations under Title VII of the Civil Rights of 1964. (Compl., DN 1). Notwithstanding the form utilized, the substance of her allegations involves a federal claim under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117.

party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the non-moving party must the produce specific evidence proving the existence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In addition, the non-moving party's arguments made in response to motion for summary judgment are not evidence.  *See Ab v. Sekendur*, No. 03 C 4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004).  Likewise, "[g]eneral assertions of fact issues, general denials, and conclusion statements are insufficient to shoulder the non-movant's burden."  *Chem. Eng'r Corp. v Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed. Cir. 1986).

## IV. <u>DISCUSSION</u>

In its motion, Steak 'n Shake argues that summary judgment is warranted on all of Williams' claims.  For the reasons outlined below, the Court agrees and grants summary judgment for Steak 'n Shake.

### A.    <u>Disability Discrimination</u>

To prove a claim of disability discrimination, a plaintiff may rely upon direct or circumstantial evidence.  *See Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003).  In the absence of direct evidence—which does not exist in this case—a plaintiff may rely upon circumstantial evidence to prove a claim based upon the burden-shifting articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, Williams bears the initial burden of proving a *prima facie* case of disability discrimination.  *See Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014).  If she meets that burden, Steak 'n Shake must prove a legitimate, nondiscriminatory reason for terminating Williams' employment.  *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310 (6th Cir. 2000) (citation omitted).  If Steak 'n Shake meets its burden, Williams bears the ultimate burden of proving pretext.  *See id.*

The Sixth Circuit has explained the requirements of proving a *prima facie* case of disability discrimination as follows:

> [A] plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) . . . the disabled individual was replaced."

*Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (citation omitted).  In its motion, Steak 'N Shake argues that Williams has failed to prove her prima facie case.

Under the ADA, an employer cannot discriminate "against a qualified individual on the basis of disability in regard to . . . discharge of employees, . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  From the allegations in the Complaint and Williams' deposition testimony, she has failed to prove that she has a disability[2] or that she was terminated because of her disability.

To fall under the protection of the ADA, Williams had to prove that she has "a physical or mental impairment that substantially limits or more of the major life activities . . . ."  42 U.S.C. § 12102(2)(A).  The applicable regulations explain that the term "substantially limits" should be broadly construed and means in the context of a disability:

> [I]t substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.  Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii).  Under the regulations, the term "major life activities" includes activities like "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working . . . ."  29 C.F.R. § 1630.2(i)(i).  *See also McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 283 (6th Cir. 2007) ("[T]he mere fact that McPherson has suffered from these maladies does not mean he was 'substantially limited' in the 'major life activity' of seeing.  The record does not demonstrate and McPherson does not argue that he was unable to see relative to how well the general population

---

[2] Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Based upon Williams' allegations, it appears that her claim is premised upon the first definition.

can see, or that he was '[s]ignificantly restricted as to the condition, manner or duration under which' he could see 'as compared to the condition, manner, or duration under which the average person in the general population can.'" (citation omitted)).

On the date of her termination, Williams has alleged that she mentioned that her back was hurting and that she wanted to go home. (Compl 3, DN 1). There is an absence of proof in the record, however, that Williams has a back condition that substantially limits any of her major life activities. While Williams testified that she had periodic back spasms that might cause her to miss a day or two of work, that evidence is insufficient to prove that any back condition she had substantially restricted any major life activity as compared to an average member of the public. *See* 29 C.F.R. § 1630.2(j)(1)(ii). Thus, Williams has failed to prove that she has a disability under the ADA.

As discussed above, Williams has not developed sufficient evidence in the record that she has a disability. In addition, there is no proof in the record as to whether Williams' position was filled after she was fired. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008). Because she has failed to prove a *prima facie* case, summary judgment is warranted.[3]

Assuming arguendo that Williams was able to make a *prima facie* case, Steak 'n Shake has presented evidence of a legitimate, nondiscriminatory reason for terminating her employment. Within a two-month period, Williams engaged in two separate incidents of

---

[3] There is conflicting evidence on the prong relating to the employer's knowledge. In Gadberry's declaration, she stated that she had no knowledge of Williams' disability or any condition that caused back pain, and that Williams had never requested an accommodation. (Gadberry Dec. ¶ 8, DN 32-3). While Williams testified that management of Steak 'n Shake knew of her back problems, the EEOC investigator's memorandum reflects that Williams acknowledged she never disclosed her disability to Steak 'n Shake and never requested an accommodation. (Williams Dep. 100:3-5, DN 32-1; Williams Dep. Ex. 15, DN 32-2). This factual dispute does not preclude summary judgment because Williams failed to prove the elements of her *prima facie* case.

inappropriate workplace conduct.   When Williams was written up after the May 27, 2012, incident, she was specifically warned that such behavior could lead to her termination.   When the second incident occurred on July 14, 2012, Williams received a second write-up and was terminated. Thus, Steak 'n Shake has met its burden to articulate a legitimate, nondiscriminatory basis for terminating her employment.

In her response to Steak 'n Shake's nondiscriminatory explanation, Williams failed to present sufficient evidence to meet her ultimate burden of proving pretext.   To prove pretext, she must establish "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." *Blazek v. City of Lakewood*, 576 F. App'x 512, 516 (6th Cir. 2014) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (internal quotation marks omitted)).

During her deposition, Williams admitted that she was aggravated during the May 27, 2012, incident and testified:

> Q.      When you say you were told maybe a few times about the way you do things is strenuous, do you mean that you bark at employees or that—what do you mean by that?
> A.      Well, okay.  Let me back up.  I'm the type person I'm a very tedious person and I do everything organized in a certain way.  And sometimes, yes, I get frustrated because in that line of business you do get frustrated, you know.  So that's the only problem I had.
> I mean, as far as disrespecting anybody of that nature, no, I never did that.  So I'd just get a little frustrated when things don't go a certain way, you know.  So that's—that's pretty much it.
> Q.      So you might, oh, come on—
> A.      Yeah, you know, to that—
> Q.      —bark at people or—
> A.      Yeah. I mean, I don't scream at them or anything like that, I'm just like, come on, guys, you know.

(Williams Dep. 45:5-25).  She further testified:

I was working the line by myself the whole time while the gentleman, the manager from Saint Louis was just walking around just looking at me.  I'm doing these orders by myself.

Well, of course, I'm getting a little frustrated, because I'm running out of things that I need to get orders complete.  No one helped me, so I did the best of my ability to try to get all these orders out.

(Williams Dep. 48:8-17).

Williams also testified regarding the events of July 17, 2012, as follows:

Q.     And you had indicated that by this point you were already a little— if you get to . . . and you had already been a little bit upset by this event, and then you got more aggravated.
       Right?
A.     Correct.
Q.     And you note that . . . kind of after you accidently dropped the tray, then you really—you say I was really getting aggravated.
A.     Yes.
Q.     And the servers were hollering?
A.     Yes.
Q.     And you're saying—you're admitting you were getting really aggravated?
A.     I was getting aggravated.
Q.     So the comment you made about looking down the line is not going to make anything get faster might have been reviewed by the other people who heard it --
A.     Uh-huh.  (Witness answers in the affirmative.)
Q.     —as being said in anger?
A.     It could be.
Q.     I mean, you were mad?  You were sitting there, I'm really aggravated?
A.     But I didn't take it out on anybody.
Q.     But you piped off that comment.
       Right?
A.     The little girl knew I wasn't mad, because she shrugged—she smiled and shrugged it off and walked away like she knew I wasn't upset with her.

(Williams Dep. 88:11-89:20).  Thus, far from denying that the subject incidents occurred,

Williams' testimony supports the employer's proffered reasons had a factual basis.

While acknowledging some of the conduct leading up to her termination, Williams'

response appears to be premised upon her personal belief that her behavior did not warrant

dismissal.  It has been consistently recognized, however, that courts "cannot sit as a super-personnel department," and that "it is inappropriate for the judiciary to substitute its judgment for that of management." *Saulsberry v. Fed. Express Corp.*, 552 F. App'x 424, 430 (6th Cir. 2014) (citing *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995) (internal quotation marks omitted)). *See also Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)*;*   Accordingly, Williams' disagreement with the reasons for her termination is not sufficient proof to meet her burden of proving pretext. *See Blizzard v. Marion Technical Coll.*, 598 F.3d 275, 286 (6th Cir. 2012) ("Blizzard's 'disagreement with [MTC's] honest business judgment regarding [her] work does not create sufficient evidence of pretext in the fact of the substantial evidence that [MTC] had a reasonable basis to be dissatisfied.'"  (alterations in original) (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001)).  For these additional reasons, Williams has failed to meet her ultimate burden of proving pretext, and the Court will grant summary judgment for Steak 'n Shake on Williams' disability discrimination claim.

### B.   Wrongful Discharge

In the Complaint, Plaintiff also asserts that her termination constituted a wrongful discharge.  Steak 'n Shake also seeks summary judgment on the basis that Williams has failed to prove a violation of public policy.

Under Kentucky law, "an employer may discharge his at-will employee for good cause, no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984) (citations omitted).  "[A] cause of action for wrongful discharged [is] based on public policy implicit in an act of the legislature." *Id.* (citing *Pari-Mutuel Clerks' Union v. Ky. Jockey Club*, 551 S.W.2d 801 (1977)).

10

During her deposition, Williams testified that she believed that she was wrongfully terminated because her manager, Lightfoot told "another employee that I was fired before telling me before I left work that day." (Williams Dep. 97:2-4, DN 32-1). Williams also testified that she suspected that Lightfoot was upset because Williams wanted to leave work early several days earlier because of pain. (Williams Dep. 97:8-13).

Taken as a whole, the gravamen of the Complaint appears to be that Steak n' Shake terminated Williams because of her disability, and that specific statutory cause of action was addressed above. *See Gryzb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1975) (noting that a claim of disability discrimination under the Kentucky Civil Rights Act would preempt a wrongful discharge claim). Aside from that claim, Plaintiff has not identified any other public policy articulated in a Kentucky statute that would sustain a separate claim of wrongful discharge.

Accordingly, Williams cannot prevail on her wrongful discharge claim as a matter law. The Court will grant summary judgment for Steak 'n' Shake on this claim.

## C.   <u>Defamation</u>

Finally, Steak 'n Shake argues that it is entitled to summary judgment on Plaintiff's defamation claim. Under the Kentucky law, "[t]he elements of defamation are: (1) defamatory language; (2) about the plaintiff; (3) which is published to a third party; and (4) which causes injury to reputation." *Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629, 636 (Ky. App. 2013) (citing *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981)).

During discovery, Williams testified that the defamatory statements were made during the course of the unemployment insurance hearing and that an unknown person had highlighted a portion of the employee handbook. (Williams Dep. 124:19-127:23, DN 32-1). Under Kentucky law, however, statements made during the course of unemployment insurance proceeding—a

quasi-judicial/administrative hearing—are protected by a qualified privilege.  *See Hawkins v. Miller*, 301 S.W.3d 507, 509 (Ky. App. 2009).  Williams has presented no evidence to meet her burden to show that any statements at the unemployment were made for an improper purpose or with actual malice in publication, which would be necessary to defeat the applicability of the qualified privilege.  *See id.* (citing *Baker v. Clark*, 186 Ky. 816, 218 S.W. 280 (1920)).

For these reasons, Steak 'n Shake is also entitled to summary judgment on the defamation claim.  The Court will dismiss this claim.

## V.  CONCLUSION

For the forgoing reasons, **IT IS HEREBY ORDERED** that Defendant Steak 'n Shake's Motion for Summary Judgment (DN 30) is **GRANTED**.

Greg N. Stivers, Judge
United States District Court

April 10, 2015

cc:     counsel of record
        Plaintiff, *pro se*